IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 13-cr-00239-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

THURMAN L. FOSTER,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Martha A. Paluch, Assistant United States Attorney for the District of Colorado, and the defendant, THURMAN L. FOSTER (the defendant), personally and by counsel, Assistant Federal Public Defender Matthew C. Golla, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I.  AGREEMENT

The defendant agrees to plead guilty to Count Three of the Indictment, charging a violation of Title 18, United States Code, Section 641, Theft of Government Property. The defendant also agrees to pay restitution in the amount of $31,000 to the United States Army.

In exchange for the defendant's plea of guilty, the government agrees that at the conclusion of the change of plea hearing, it will move to dismiss all of the remaining charges in the Indictment against the defendant with prejudice. The government also



agrees that it will not oppose defendant's request for a variant sentence of probation.

## II. ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of the offense[s] to which this plea is being tendered are as follows:

*First:* the money belonged to the United States government;

*Second:* the defendant knowingly converted to his use money with the intention of depriving the owner of the use or benefit of the money;

*Third:* the value of the money was more than $1,000.

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 641 is: not more than 10 years of imprisonment; not more than $250,000 fine, or both; not more than three years of supervised release; $100 special assessment fee; plus $31,000 in restitution payable to the United States Army.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below.

Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. §3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is approximately January 9, 2008.

The parties agree as follows:

In approximately September of 2005, the Army National Guard Bureau, located in Arlington, Virginia, entered into a contract with Document & Packaging Brokers, Inc. ("Docupak"), located in Alabaster, Alabama, to administer a program called the Guard Recruiting Assistance Program ("G-RAP"). The G-RAP was designed to offer monetary incentives in the form of recruiting referral bonuses to Army National Guard Reserve soldiers, known as Recruiter Assistants (RA), to recruit other individuals to serve in the U.S. Army National Guard. After enrolling online and completing an online training course regarding the regulations governing G-RAP, the RA would establish an online account to record that RA's recruiting efforts. If a potential soldier, known as a

3

nominee, signed an enlistment contract, the RA who recruited that nominee would receive a $1,000 payment through direct deposit into a bank account designated by the RA in his online RA account. The RA would receive an additional $1,000 direct deposit payment if the nominee attended basic training. If a nominee had previously served in the Armed Forces, that nominee was not required to attend basic training. In that instance, the RA would receive a $2,000 referral bonus upon that nominee's enlistment. Payments were wired from Docupak's Alabama bank account to the RA's designated bank account. Active Army National Guard recruiters were not eligible to participate in the G-RAP because they already received their government salary as compensation for their recruiting efforts.

Docupak submitted invoices each month to the Contracting Officer Representative of the Army National Guard Bureau assigned to the Docupak contract for review and verification of services delivered.

The G-RAP specifically prohibited an RA from nominating a nominee who the RA did not personally recruit. The RA was required to obtain a nominee's personal information directly from that nominee in order to receive the bonus money for that nominee.

On or about September 23, 2008, in the State and District of Colorado, the defendant knowingly stole G-RAP bonus money payments, which money was the property of and made under contract with the Department of Defense, a department or agency of the United States of America, by causing the direct deposit of G-RAP referral bonus payments totaling $2,000 for the alleged recruitment of Army National Guard

Nominee Holland, to which the defendant was not entitled, into the defendant's Colorado Springs, Colorado, bank account.

When interviewed, the defendant admitted that while serving as an RA, he received $31,000 in G-RAP referral bonus money to which he was not entitled.

## VI.   ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A.   The base guideline is § 2B1.1(a)(2), with a base offense level of 6.

B.   Pursuant to § 2B1.1(b)(1)(D), the base offense level is increased by 6 levels for more than $30,000 but less than $70,000 in loss.

C.   At this time, the government knows of no victim-related, role-in-offense, obstruction and/or multiple- count adjustments.

D.   The adjusted offense level therefore would be 12.

E.   The defendant should receive a 2-level downward adjustment pursuant to § 3E1.1(a), provided he does not engage in any conduct inconsistent with acceptance of responsibility for this offense between the time of his guilty plea and sentencing.  The

resulting offense level therefore would be 10.

F.  The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be I.

G.  The career offender/criminal livelihood/armed career criminal adjustments do not apply.

H.  The advisory guideline range resulting from these calculations is 6-12 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 6 months (bottom of Category I) to 30 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the count of conviction.

I.  Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $2,000 to $20,000 plus applicable interest and penalties.

J.  Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least one year but not more than three years.

K.  Pursuant to § 5E1.1, the defendant shall pay restitution in the amount of $31,000 to the United States Army.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the

Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.   ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or

assurances not expressly stated in this agreement.

Date: 11/12/13

THURMAN L. FOSTER
Defendant

Date: 11/12/13

MATTHEW C. GOLLA
Attorney for Defendant

Date: 11/12/13

MARTHA A. PALUCH
Assistant U.S. Attorney

8